**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian O. Claros-Bey,<br><br>Petitioner,<br><br>v.<br><br>J.T. Shartle, Warden,<br><br>Respondent. | No. CV-15-00501-TUC-BGM<br><br>**ORDER** |

Currently pending before the Court is Petitioner Brian Claros-Bey's *pro se* Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondent has filed his Return and Answer ("Answer") (Doc. 10). Petitioner did not file a Reply, but rather filed a Motion for Summary Judgment (Doc. 16). Respondent filed a Response to Petitioner's Motion for Summary Judgment (Doc. 17).

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is an inmate currently incarcerated at the United States Penitentiary ("USP") in Tucson, Arizona, serving a 500 month sentence. *See* Fed. Bureau of Prisons ("BOP") Inmate Locater, https://www.bop.gov/inmateloc/ (last visited September 16,

2016); Answer (Doc. 10), Huband Decl. (Exh. "1"), Superior Ct. of the Distr. of Columbia, Judgment in a Criminal Case (Attach. "2") at 1.  At sentencing, the Superior Court for the District of Columbia ordered Petitioner to pay $500 pursuant to the Victims of Violent Crime Compensation Act of 1996.  *Id.*  The Judgment indicates that these costs "ha[d] not been paid" at the time of sentencing.  *Id.*

On October 19, 2015, Petitioner filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in this Court.  Petition (Doc. 1).  Petitioner contends that "[b]y being subjected to the lowest score on 'Responsibility' on the Custody Classification Form (BP-338) in accordance with the United States Bureau of Prisons' ('BOP') Security Designation and Custody Classification Manuel [sic] Program Statement, and receiving poor 'program reviews' for not participating in the BOP's Inmate Financial Responsibility Program ('IFRP') violates [sic] the treaty and/or contract that the District of Columbia has with the BOP (D.C. Code 24-101)."  Petition (Doc. 1) at 4.  Petitioner further asserts that Section 24-101(b), of the District of Columbia code, gives "BOP authority to subject District of Columbia prisoners . . . 'to any law or regulation applicable to persons committed for violations of laws of the United States CONSISTENT with the sentenced [sic] imposed.'"  Petition (Doc. 1) at 4.  Petitioner asserts that because BOP Program Statement Number P5380.08 regarding the Inmate Financial Responsibility Program "does not include the Victims of Violent Crime Compensation Act of 1996 ("VVCCA") . . . [a]ssessments under the VVCCA is [sic] not an applicable IFRP assignment."

## II. ANALYSIS

### A. *Jurisdiction*

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, before proceeding to any other issue a court must establish whether a habeas petition is filed pursuant to § 2241 or § 2255 to determine whether jurisdiction is proper. *Id.* at 865.

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence; rather, he seeks relief with respect as to how the ordered criminal monetary penalties are being collected while he is incarcerated at a federal facility. Thus, Petitioner is challenging the manner, location, or condition of the execution of his sentence. When a petitioner challenges the "manner in which his sentence was executed," the action is "maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241." *Tucker v. Carlson*, 925 F.2d 330, 331 (9th Cir. 1991); *see also Ward v. Chavez*, 678 F.3d 1042 (9th Cir. 2012) (considering whether the district court impermissibly delegated its authority to BOP under the Mandatory Victims Restitution Act ("MVRA") under § 2241); *United States v. Lemoine*, 546 F.3d 1042 (9th Cir. 2008) (considering validity of

IFRP requiring restitution payments at a greater rate than specified by the sentencing court under § 2241). Challenges brought pursuant to § 2241 must be brought in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP–Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *See Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990).

### B.     Exhaustion

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55, 115 S.Ct. 2021, 2023–24, 132 L.Ed.2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency

- 4 -

consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Here, Respondent asserts that Petitioner has failed to exhaust his administrative remedies prior to filing his Petition. Answer (Doc. 10) at 5. Indeed, Petitioner admits that he has not exhausted his claim, stating that "[i]t would be useless to exhaust administrative remedies, because this Ground raises only issues of law upon which the BOP has already assumed that the IFRP is applicable to VVCCA assessments and is using BOP Program Statement Number P5380.08 to articulate its position." Petition (Doc. 1) at 4. "Because of the existence of official BOP policy—the IFRP—exhaustion would be futile here[.]" *Ward v. Chavez*, 678 F.3d 1042, 1046 (9th Cir. 2012). As such, this Court will reach the merits of Petitioner's claim.

*C.     Merits of the Petition*

### 1. Statutory and Regulatory Background of the IFRP

#### a. District of Columbia Prisoners and the Victims of Violent Crime Compensation Act of 1996

Section 24-101(b), District of Columbia Code, governs felons sentenced pursuant to the D.C. Official code and provides for their transfer "to a penal or correctional facility operated or contracted for by the Bureau of Prisons." D.C. Code § 24-101(b). The statute further provides that "[s]uch persons shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed, and the Bureau of Prisons shall be responsible for the custody, care, subsistence, education, treatment and training of such persons." *Id.*

- 6 -

The Victims of Violent Crime Compensation Act of 1996 provides in relevant part that:

> In addition to and separate from punishment imposed, an assessment of $100 for each violation of § 50-2201.05, an assessment of between $50 and $250 for other serious traffic or misdemeanor offenses, and an assessment of between $100 and $5,000 for each felony offense shall be imposed upon each person convicted of or pleading guilty or *nolo contendere* to the offense in the Superior Court of the District of Columbia or any other court in which the offense is charged.  The decision of the sentencing court regarding assessments is final.  ***If an offender is indigent at the time of sentencing and is later employed for salary, receives compensation while on probation or parole, or is incarcerated in a facility of the Department of Corrections or elsewhere and receives wages or compensation therein, the amount of assessments under this section shall be paid from such salary, wages, or other compensation.***

D.C. Code § 4-516(a) (emphasis added).  As such, the Act clearly contemplates that incarcerated individuals shall be responsible for paying their assessment from prison "wages or compensation."  Furthermore, "[a]ssessments under this chapter shall be collected as fines."  D.C. Code § 4-516(c).  The Ninth Circuit Court of Appeals has held that the scheduling of payment of fines may be delegated to the BOP.  *United States v. Gunning* (*Gunning II*), 401 F.3d 1145, 1150 (9th Cir. 2005) (citing *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 550 (9th Cir. 1998)).

### b. Inmate Financial Responsibility Program (IFRP)

The BOP "encourages each sentenced inmate to meet his or her legitimate financial obligations" through the IFRP.  *See* 28 C.F.R. § 545.10.  "As part of the initial classification process, [BOP] staff will assist the inmate in developing a financial plan for meeting those obligations."  *Id.*  The financial plan is designed to meet the inmate's financial obligations in the following order of priority:  (1) special assessment; (2) court-

ordered restitution; (3) fines and court costs; (4) state or local court obligations; and (5) other federal government obligations.  28 C.F.R. § 545.11(a).  Payments for the aforementioned obligations may be made from institution resources, such as prison work assignments, or from community resources.  28 C.F.R. § 545.11(b).

Through the IFRP, the BOP encourages inmates with financial obligations to participate in the voluntary program, but does not force inmates to participate. *United States v. Lemoine*, 546 F.3d 1042, 1047 (9th Cir. 2008); *see also* 28 C.F.R. § 545.10.  The Ninth Circuit Court of Appeals has squarely addressed an inmate claims that the IFRP was "involuntary and that he only assented to the terms of his financial plan 'to avoid the adverse consequences of not agreeing.'" *Lemoine*, 546 F.3d at 1049.  The *Lemoine* court held that the IFRP "does not implicate [an inmate's] constitutional rights[,]" because an inmate "ha[s] no entitlement, constitutional or otherwise, to any of the benefits agreeing to participate in the IFRP would provide, such as work detail outside the prison perimeter, a higher commissary spending limit, a release gratuity, or pay beyond the maintenance pay level." *Id.*  Accordingly, "[t]he BOP . . . ha[s] the authority to create a financial plan . . . through the IFRP and to impose penalties if [an inmate] fail[s] to accept its terms." *Id.*

### 2. Petitioner's Fine Pursuant to the Victims of Violent Crimes Compensation Act of 1996 is Being Lawfully Collected

At sentencing, the Superior Court of the District of Columbia assessed a $500 penalty against Petitioner pursuant to the Victims of Violent Crime Compensation Act of 1996.  Answer (Doc. 10), Huband Decl. (Exh. "1"), Superior Ct. of the Distr. of

- 8 -

Columbia, Judgment in a Criminal Case (Attach. "2") at 1.  The VVCCA directs that assessments made pursuant to it "shall be collected as fines."  D.C. Code § 4-516(c).  The Ninth Circuit Court of Appeals has held that the scheduling of the payment of fines may be delegated to the BOP.  *Gunning II*, 401 F.3d at 1150 (citing *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 550 (9th Cir. 1998)).  As such, the collection of Petitioner's VVCCA obligations through the IFRP are valid.

Petitioner voluntarily enrolled in IFRP, and currently participates in the program.  Answer (Doc. 10), Exh. "A," Inmate Financial Plan (Attach. "3") at 1–2.  Petitioner is free to stop participating in the IFRP at any time.  Petitioner claims that he is only participating in the program "to avoid receiving the lowest score on 'Responsibility' on the Custody Classification form (BP 338).  Pet.'s Mot. for Summ. J. (Doc. 16) at 3.  Petitioner "did not have a preexisting right to receive any of the benefits conditioned on his participation" in the IFRP, nor does he have any constitutional rights to those privileges.  *Lemoine*, 546 F.3d at 1046–49.  Moreover, the BOP is within its authority offer the IFRP, and Petitioner's voluntarily participation allows the BOP to collect and allocate Petitioner's funds to his fines and special assessment.  Accordingly, Petitioner's claims are without merit and his Petition (Doc. 1) shall be denied.

### D.     *Petitioner's Motion for Summary Judgment*

On January 14, 2016, Petitioner filed his Motion for Summary Judgment (Doc. 16). Motions for Summary Judgment are not contemplated by the statutes governing habeas corpus.  28 U.S.C. § 2241, *et seq.*  As such, and based on the foregoing denial of Petitioner's habeas petition on the merits, the Court will deny Petitioner's motion for

summary judgment.[1]

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that

(1) Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1) is DENIED;

(2) Petitioner's Motion for Summary Judgment (Doc. 16) is DENIED; and

(3) The Clerk of the Court shall enter judgment and close its file in this matter.

Dated this 16th day of September, 2016.

                                            Honorable Bruce G. Macdonald
                                            United States Magistrate Judge

---

[1] In light of Petitioner's failure to file a Reply, as well as the contents of the Motion for Summary Judgment, the Court treated Petitioner's motion as his Reply in assessing the merits of his habeas petition.